Tucker, P.
The claims of the petitioning creditors to have satisfaction out of the proceeds of the escheated lands, are resisted on two grounds—that the debts are not proved; and that the claims are barred by the statute of limitations.
1st, As to Lyle’s case, the court holds that the debt is sufficiently proved ; and the only questions in that case are those which arise out of the plea of the statute of limitations. To the defence founded on the statute, two answers have been given : 1. that the escheator as representing the commonwealth, cannot plead the statute; and 2. that the account is between merchant and merchant, and not within the bar of the statute.
In deciding the first of these questions, I do not think it necessary to examine, generally, whether the commonwealth is within the statute of limitations. I incline to think she is not. But, in this case, the statute has constituted the escheator the defendant in the action, and has directed that he shall defend the suit. That defence is not against a claim exhibited against the commonwealth, but against the estate of a decedent, escheated to the state, which the liberal spirit of our laws permits to be charged with any just demands against that decedent. Of these claims the common *247 •wealth and her officers have, and can have, no personal knowledge. Whether they were just in their origin, or have been paid, may be, and in the nature of the thing, must usually be, unknown to them ; and if paid, it may be out of their power to furnish the evidence, either oral or documentary, to establish the payment. The papers of the decedent do not fall into the hands of the escheator; and where he leaves no heirs and no personal estate, there is no one on whom the duty would devolve, of preserving the vouchers which might prove the satisfaction of a demand. Cases like this call most loudly for the protection of the statute against stale and antiquated claims; and if there be any instance, in which we are to make a practical application of the principle, that cases within the mischiefs of a statute, are to be regarded as embraced by its provisions, that instance is afforded here. The petition, indeed, is not one of the actions designated in the statute ; but it is precisely analogous to the action of assumpsit upon a merchant’s account; and in the same spirit in which a court of equity regards the statute as running against a bill, though bills are not mentioned in the statute, a court of law ought to regard it as running against this petition, which is, in effect, an action to recover the amount of an open account. The object of the statute was to limit stale demands of certain descriptions (accounts among others) whatever might be the nature of the suit instituted for their recovery.
It is said, indeed, that no one can plead the statute of limitations, but a party to the transaction, and cases under the bankrupt laws in England, have been cited to sustain the position. It is unimportant to examine those cases here. Nothing is better established, than that where an executor declines, as he may do in his discretion, to plead the statute, a creditor of the estate may, nevertheless, insist upon it before the master; Ex parte Dewdney, 15 Ves. 498. It would be strange indeed, if it were otherwise; for when there is likely to be a deficiency of assets, those who are interested in them ought to be at liberty to protect them by *248 every legal defence. So here, the commonwealth, having , , liberally admitted demands upon the land, it is at least reasonable that those demands should be clearly established, and that she should be permitted, through her escheator, to protect the estate from unjust claims, by the same defences the decedent’s administrator would have had. Or, considering her in the light of an heir or mortgagor, against whom a simple contract creditor seeks to marshal the assets, she would be entitled through her officer to the defence of the statute. So, if before this statute, the lands of a mortgagor had escheated to the commonwealth, and the mortgagee being paid out of the personalty, the simple contract creditors had sought to charge the land, there can, I think, be no doubt that the commonwealth, standing in the shoes of the mortgagor, would have a right to the defence of the statute of limitations. But the case here, is infinitely stronger. The commonwealth, through her officer is here, in part, in a fiduciary character. By her law, notwithstanding the es-cheat and sale of the land, and the payment of the proceeds into the treasury, any person shewing title to the land may at any time within ten years assert his claim; and if it be established, shall be entitled to receive the net proceeds of the purchase money. The commonwealth, then, stands here as the representative of the estate. The defences of the estate, by her officer, are indeed, in the first instance, defences of her own right, but they may peradventure turn out to be defences of the rights of some unknown heir. She must, therefore, be looked on as to these defences, as defending for the heir, and as entitled to plead what an heir might rely on, who was resisting an attempt to charge his land with a simple contract debt, by a bill to marshal assets. I am therefore of opinion, that the plea of the statute of limitations was an available plea in this case, unless the appellees can bring themselves within the exceptions of the statute.
This is attempted by replying, that the account is an account between merchant and merchant concerning the trade *249 of merchandize; and the influence of this replication is resisted on two grounds (in the case of Lyle’s administrator), 1st, It is said, that cases of notes and bills are not within the exception. But this is not an action upon a bill or note; the bill was sold by Miller, and the full amount being eredited, it must be presumed to have been paid. There is then no demand upon the bill. The demand is for the excess of the account above the bill. 2ndly, It is said, this is an account stated or closed in 1806. But, though the dealings then ceased, the account is not for that reason an account stated. An account stated is where the accounts between the parties have been either actually settled, or are presumed to be so from the circumstance of a party’s retaining, for a long time, without objection, the account of the other party, which has been presented to him, shewing a balance against him. By the settlement (or implied admission which is considered equivalent) it has become an ascertained debt. All intricacy of account, or doubt as to which side the balance may fall, is at an end; and thus the case is neither within the letter nor the spirit of the exception. 2 Wms. Saund. 127. d. e. note 7. Freeland v. Heron &c. 7 Cranch, 147. The cases have indeed been contradictory as to the question, whether open accounts are or are not barred (though they be between merchant and merchant) where the last item is above five years standing. Chancellor Kent is in favor of the bar in such cases; Carter v. Murray, 5 Johns. C. R. 522. and a like opinion is intimated in Jones v. Pengree, 6 Ves. 580. Duff v. East India Co. 15 Ves. 198. Barber v. Barber, 18 Ves. 286. Yet in Foster v. Hodgson, 19 Ves. 179. 185. the whole matter seems to be again unsettled in England. But in Mandeville v. Willson, 5 Cranch, 15. the supreme court was clearly of opinion, that it is not necessary that any of the items, in the case of merchants’ accounts, should come within the five years. This is, I think, the reasonable doctrine ; for otherwise, there is no perceivable difference between merchants’ accounts and others; since, even between *250 common persons, if there be items within five years, the • • statute does not bar. See also Catling v. Skoulding, 6 T. R. 189. 192.
In Lyle’s case, then, I do not think the bar would apply strictly as such, if the replication were true. But what evidence is there in this case, that the account concerned the trade of merchandize between merchant and merchant ? Absolutely none. There is no proof that the parties were merchants; and the account contains no charge of merchandize.* In this case, then, the bar, I conceive, is complete.
Then, 2ndly, As to Robertson’s case. This, though less exposed to the objection of the staleness of the demand, is yet more fundamentally defective than the other. Its defects are in the proofs of the demand, and the nature of the claims. The proof of the demand is altogether defective, because it is certain that the whole account is not proved, and it is uncertain to what part, or to what amount, the proof extends. The witness swears, that the greater part of the items were charged by Scott, and that a small part was charged by Triplett; of the rest there is no proof. Can we divine what items were entered by these two clerks? Or can we ascertain, from this vague testimony, how much their charges will amount to in the aggregate ? It is impossible. If so, then it may be that the very entries made by these witnesses may have been those which related to the bills and notes, and which may, therefore, probably be unprotected by the exception in the statute; or those which were made after the intestate’s death, which for other reasons may be objected to. And, moreover, as the aggregate amount of what was entered by those clerks is not proved, it is not perceived how the sum could be ascertained for which the judgement should have been entered. Accordingly, we find, the court, being unable to distinguish, gave a judgement for the whole account, whereas it is very *251 clear that the whole account was not proved. I am, there-f, c . . .... . . . . . tore, oí opinion, that m this case also the judgement is erroneous.
Believing it possible that something may be due in Roíertson’s case, I have reflected upon the practicability of sending the cause back for further proceedings. But as the case is at law and not in equity, I do not see how it can be done. The parties have put their rights upon this issue and this evidence; and they must abide it.
Judgements reversed in both cases, and petitions dismissed.

 There was one charge for goods sold; note by reporter.